## 31201. INGALLS IRON WORKS COMPANY v. CHILIVIS.

Ingram, Justice.

This case concerns a sales and use tax assessment against appellant by the Revenue Commissioner under Code Ann. § 92-3410a (b) (Rev. 1974) (Ga. L. 1968, pp. 496, 497, as amended, Ga. L. 1970, pp. 595, 596). In this appeal from the Fulton Superior Court appellant attacks the constitutionality of this Code section which was enacted after a prior ruling by the Court of Appeals that Ingalls was not liable for a similar assessment under Code Ann. § 92-3410a (Ga. L. 1951, pp. 360, 371). *Hawes v. Ingalls Iron Works Co.,* 117 Ga. App. 80 (159 SE2d 434) (1968).

The taxpayer purchases raw steel outside the state which it fabricates and uses in two ways. Part of the fabricated steel is sold by the taxpayer to independent

contractors. The taxpayer also uses some of the steel it fabricates in performing its own erection contracts. A person who engages in these operations is known as a "dual operator." The taxpayer acts as both a dealer (or retailer) and a contractor (or user) and is registered with the State Revenue Department in both capacities.

A use tax on the purchase price of the raw steel was paid by the taxpayer but the Revenue Commissioner made an additional assessment under Code Ann. § 92-3410a (b) on the basis of 3 percent of the value of the fabricated steel. In 1968, when the Court of Appeals decided the first *Ingalls* case, there was a disparity in the taxation of contractors who purchased fabricated steel for use in their contracts and contractors who purchased raw steel and fabricated it themselves. The sales and use tax liability of the first group was 3 percent of the cost of the fabricated steel, whereas the latter group was taxed at 3 percent of the cost of the raw steel. Thus, the contractor who fabricated his own steel received a competitive edge by avoiding payment of taxes on the marginal value between the cost of the raw steel and fabricated steel.

In the earlier case the Revenue Commissioner levied a use tax against Ingalls based on the value of its fabricated steel and argued that since Ingalls used steel it fabricated it should be regarded as a purchaser of the fabricated steel used by it in performing its own erection contracts. However, the Revenue Department applied this "fictitious purchaser" concept only to taxpayers known as dual operators who, like Ingalls, used some and sold some of the steel they fabricated from raw steel.

This would have created disparity in the tax treatment of those who fabricate steel solely for their own use and those who are dual operators. The Court of Appeals held that there was no authority under Code Ann. § 92-3410a to treat Ingalls as a purchaser of its own steel. "We find no authority in the statute for different treatment of transactions of the same kind dependent upon whether the taxpayer is engaged in only one kind of business enterprise or more than one kind. We are of the opinion, therefore, that this court should not create a fictional transaction."

Thus, in the 1968 decision, Ingalls was held not liable

for a use tax on the fabricated steel under Code Ann. § 92-3410a. That Code section provided, in pertinent part: "If a purchaser makes any use of property other than retention, demonstration, or display while holding it for sale in the regular course of business the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him. . ."

The 1968 statute, adopted after *Ingalls* was decided by the Court of Appeals, provides that: "If a person who engages in the business of processing, manufacturing or converting industrial materials into articles of tangible personal property for sale, whether as custom made or stock items, makes any use of such an article other than retaining, demonstrating, or displaying it for sale, such use shall be deemed a retail sale as of the time such article is first used by him and its fair market value at such time shall be deemed the sales price of such article." Code Ann. § 92-3410a (b).

The Revenue Commissioner argues that in enacting this taxing provision, the legislature has now created a special category and method of taxation for dual operators while eliminating the objectional aspects of the application of the sales and use tax articulated in the first *Ingalls* case. The taxpayer argues that the 1968 statute has "failed to breathe constitutionality into the inherently discriminatory nature of the 'dual operator' concept," and that this section, both on its face and as applied, violates the commerce clause and the equal protection clause of the United States Constitution.

The brief of the taxpayer does not pursue its argument in support of the contention that the commerce clause has been violated. It is clear, however, that a tax on the privilege of using items of tangible personal property after they have come to rest in a state and commerce is at an end is not a tax on the operators of interstate commerce. See, e. g., Henneford v. Silas Mason Co., 300 U. S. 577, 582, 587 (1937); McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 47 (1940).

The taxpayer makes essentially two arguments against the constitutionality of the 1968 statute: (1) that it discriminates against out-of-state, in relation to in-state, dual operators; and (2), that it discriminates

against dual operators in relation to fabrication-erection contractors, whether in-state or out-of-state. The Revenue Commissioner contends the new law (Code Ann. § 92-3410a (b)) taxes both in-state and out-of-state dual operators equally. We agree. The statute itself refers to "a person who engages in the business of processing, manufacturing, or converting industrial materials [raw steel] into articles of tangible personal property for sale [fabricated steel]" and imposes the tax at the time "such article [fabricated steel]" is first used by him in a manner other than preparation for sale. When this section is read in pari materia with the general use tax provision, Code Ann. § 92-3403a (b), it is apparent that the first use referred to in the statute means the first use in Georgia, and the tax base is the fair market value of the fabricated steel at that time. Thus, we conclude that all dual operators must be taxed equally under the statute.

The taxpayer also argues that the new law denies dual operators equal protection of the law because fabrication erection contractors engaged in the same operation — using steel they have fabricated in performing their own erection contracts — are taxed only upon the purchase price of the raw steel. This was the issue adumbrated in the first *Ingalls* case decided by the Court of Appeals. The mandate of the equal protection clause is that the law not be applied differently to different persons under the same or similar circumstances. *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746) (1967). However, "where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." Lehnhausen v. Lake Shore Auto Parts Co., 410 U. S. 356, 359 (1973). The Equal Protection Clause "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." Allied Stores of Ohio v. Bowers, 358 U. S. 522, 526 (1958).

In *Dixie-Ohio Express Co. v. State Revenue Commr.,* 186 Ga. 228 (197 SE 887) (1938), this court upheld the constitutionality of a license tax for road maintenance imposing higher rates upon carriers for hire than upon

carriers not for hire. The court stated that the legislature may make classifications of subjects for taxation and that the power to classify necessarily included the power to subclassify. Quoting from Carmichael v. Southern Coal &c. Co., 301 U. S. 495, 509 (1937), the court said: "A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable set of facts that would support it." See also *Blackmon v. Monroe,* 233 Ga. 656, 659 (212 SE2d 827) (1975).

Therefore, the final question presented is whether the distinction drawn in the new 1968 statute has a "rational basis" which can be supported by "any conceivable set of facts." Admittedly, the new statute does contain a "different treatment of transactions of the same kind depending upon whether the taxpayer is engaged in only one kind of business enterprise or more than one." But this distinction is not without a rational basis. Dual operators are both "dealers" and "contractors." They are different from fabrication-erectors who are only "contractors." In our opinion, they may be treated differently by the legislature, in adopting a uniform system of taxation which treats all dual operators alike, without offending the equal protection clause. We believe the trial court correctly granted a summary judgment in favor of the Revenue Commissioner and find no error for any reason enumerated in this appeal.

*Judgment affirmed. All the Justices concur.*

Argued June 16, 1976 — Decided September 8, 1976.

*Westmoreland, Hall, McGee & Warner, J. M. Crawford, Paul R. Jordan,* for appellant.

*Arthur K. Bolton, Attorney General, David A. Runnion, Gary Andrews, Assistant Attorneys General,* for appellee.