### S10A1083. BLEVINS v. DADE COUNTY BOARD OF TAX ASSESSORS.

(702 SE2d 145)

NAHMIAS, Justice.

On April 25, 2002, the General Assembly passed House Bills 918 and 919, which provided for local homestead exemptions for Dade County, subject to the approval of Dade County voters. House Bill 918 established a homestead exemption from certain Dade County ad valorem taxes for county purposes in an amount equal to the amount by which a residential property's current year assessed value exceeds the base year assessed value. House Bill 919 established a similar homestead exemption from certain Dade County School District taxes for educational purposes. The base year under the bills "is the taxable year immediately preceding the taxable year in which the [homestead] exemption is first granted to the most recent owner of [the] homestead." The bills therefore generally establish acquisition value tax exemptions. The exemptions are available to homeowners only, and they apply only to a taxpayer's primary residence and not more than three contiguous acres of land immediately surrounding the residence. The exemptions do not apply to taxes assessed on "improvements to the homestead" or to land that is added to the homestead after July 1 of the base year. Dade County voters approved the homestead exemptions on November 5, 2002.

Appellant Rex Blevins owns land in Dade County but not a home that qualifies for the exemptions. He brought this action, challenging the constitutionality of the homestead exemption bills on several

grounds. The trial court ruled against Blevins's claims, and he appealed. We now affirm.

1. Blevins contends that the tax exemptions violate the Uniformity Clause of the Georgia Constitution, which provides that "all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Ga. Const. of 1983, Art. VII, Sec. I, Par. III (a). In addition, Paragraph III (b) provides that, with limited exceptions not applicable here, "the classes of subjects for the taxation of property shall consist of tangible property and one or more classes of intangible personal property."

To support its position that the tax exemptions do not violate the Uniformity Clause, the Dade County Board of Tax Assessors relies on cases that hold that, "[w]here uniformity of taxation is involved, reasonableness of classification is all that is required." *Chanin v. Bibb County*, 234 Ga. 282, 290 (216 SE2d 250) (1975). Accord *Lake Lanier Theatres v. Hall County*, 229 Ga. 54, 55-56 (189 SE2d 439) (1972). These cases, however, did not involve "tangible property." See *Chanin*, 234 Ga. at 287-290 (excise taxes); *Lake Lanier Theatres*, 229 Ga. at 55-56 (business license taxes); *Wright v. Hirsch*, 155 Ga. 229, 235-242 (116 SE 795) (1923) (occupation taxes).

By contrast, the Constitution creates "tangible property" as a single class of property. See Art. VII, Sec. I, Par. III (b). "Tangible property" includes real and personal property, and "the General Assembly has no authority to establish different classes or subclasses of tangible property other than as fixed by the [Constitution]." *Griggs v. Greene*, 230 Ga. 257, 263-264 (197 SE2d 116) (1973). See also *Benson-Corwin, Inc. v. Cobb County School Dist.*, 239 Ga. 199, 200 (236 SE2d 361) (1977) (holding that real and personal tangible property "constitutes a single class of property and must be assessed and taxed alike"). The types of tangible property that may be separately classified and subclassified by the General Assembly under the Uniformity Clause are listed in subsection (b) of Article VII, Section I, Paragraph III and are inapplicable in this case.

Thus, the Uniformity Clause itself does not permit the classification and subclassification of the "tangible property" involved in this case. Nevertheless, we conclude that the Dade County homestead exemptions are constitutional under one of the Tax Exemption Clauses of our Constitution. See Ga. Const. of 1983, Art. VII, Sec. II, Par. II. Tax exemptions in general are at odds with the equality of taxation sought by the Uniformity Clause. See *Southwestern Bell Tel. Co. v. Combs*, 270 SW3d 249, 263 (Tex. App. 2008) (holding that "exemptions from taxation are subject to strict construction because they place a greater burden on other tax-paying businesses and individuals rather than placing the burden on all taxpayers

equally. . . . As such, tax exemptions are 'the antithesis of equality and uniformity.' " (citation omitted)); *Gilman v. Sheboygan*, 67 U. S. 510, 517 (17 LE 305) (1863) (" 'It cannot be denied that under the power of exemption unjust enactments in respect of the power of taxation might be made. But those who framed the [Wisconsin] Constitution did not see fit to prevent such evils by depriving the Legislature of the power.' " (citation omitted)).

The Georgia Constitution, however, expressly authorizes state-wide tax exemptions that are inconsistent with uniformity and equality in taxation of tangible property. Article VII, Section II, Paragraph II (a) (1) permits the General Assembly to provide for a broad range of exemptions of property from ad valorem taxation if the "exemption is approved by two-thirds of the members elected to each branch of the General Assembly and by a majority of the qualified electors of the state voting in a referendum thereon." Pursuant to this authority, the General Assembly has approved, for example, homestead exemptions for each resident of the State who owns and occupies a home as a residence, OCGA § 48-5-44; additional homestead exemptions for each person who is 65 years of age or older, OCGA § 48-5-47, and for disabled veterans, OCGA § 48-5-48; and exemptions for qualified farm products, OCGA § 48-5-41.1. The General Assembly has also provided a homestead exemption for individuals 62 or older with annual incomes not exceeding $30,000 that is calculated in the same fashion as the exemptions in this case. See OCGA § 48-5-47.1 (a) (3) and (b) (authorizing an exemption equal to the amount by which a property's current year assessed value exceeds the value for the taxable year immediately preceding the taxable year in which the exemption was first granted to the resident, with the exemption applying only to five acres of land immediately surrounding the residence and not applying to improvements to the property or to land added to the property after the base year).

In contrast to the number of statewide tax exemptions the General Assembly, along with the citizens, may approve, Article VII, Section II, Paragraph II (a) (2) of the Constitution permits only one exemption — for a homestead — to be enacted by local law, and it must be approved by the General Assembly and "by a majority of the qualified electors residing within the limits of the taxing jurisdiction voting in a referendum thereon." Over the years, the General Assembly has approved and local voters have ratified many local homestead exemptions like those in this case. See, e.g., Ga. L. 2006, p. 4636 (DeKalb County); Ga. L. 2002, p. 5858 (Walton County).

This Court must construe the Georgia Constitution to make its parts harmonize and to give sensible meaning to each of them. See *Blum v. Schrader*, 281 Ga. 238, 241 (637 SE2d 396) (2006); *Fulton*

*County v. Perdue*, 280 Ga. 807, 810 (631 SE2d 362) (2006). Construing the Uniformity Clause and the Tax Exemption Clauses of the Constitution in this way, we conclude that the legislature and the voters of this State have the constitutional authority to exempt certain tangible property from taxation even though it creates some nonuniformity of taxation. Any other construction would defeat the constitutional grant of authority to authorize homestead exemptions. See *Chicagoland Chamber of Commerce v. Pappas*, 880 NE2d 1105, 1125-1132 (Ill. App. 2007) (holding that a homestead exemption similar to those provided in Dade County did not violate Illinois's Uniformity Clause); *Simmons v. Idaho State Tax Comm.*, 723 P2d 887, 890-892 (Id. 1986) (holding that a homestead exemption exempting the lesser of the first $50,000 or 50% of the value of an owner-occupied residence did not violate Idaho's Uniformity Clause).

In *Simmons*, the owners of income-producing property argued that the homestead exemption had the same effect as a tax scheme that initially assessed owner-occupied residences at a lower rate than income-producing property and that Idaho courts had held that such schemes violated Idaho's Uniformity Clause. See id. at 890. But the Idaho Supreme Court held that,

> [w]hile the effect of initial assessment of owner-occupied residential property at rates differing from income producing property may differ little in substance from an initial uniform assessment of both properties, followed by a partial exemption of the residential property, the state constitution contemplates such a distinction.

Id.

The Georgia Constitution contemplates the same distinction. We note that the hurdles to creating a local homestead tax exemption — a decision of the General Assembly to place the matter before the affected voters and then voter approval of the proposed exemption — provide much greater protection for citizens than a system that would permit every local tax authority to make its own unilateral decision, with no input from the taxpayers, to impose different assessment rates on different types of tangible property. Thus, *Benson-Corwin*, on which Blevins relies, is inapplicable. There, Benson-Corwin's property was annexed into the City of Marietta from the unincorporated area of Cobb County, and the assessed value of its property was increased. See 239 Ga. at 199. Benson-Corwin argued that the assessed value of its property should have been frozen when it was annexed into the City. See id. This Court disagreed, holding that permitting the local tax authority to freeze

the assessed value would violate the Uniformity Clause. See id. at 200. Because *Benson-Corwin* did not involve a tax exemption enacted pursuant to another provision of the Constitution, it is inapplicable.

For these reasons, we conclude that the Dade County homestead exemptions do not violate the Uniformity Clause.[1]

2. Blevins contends that the school tax exemption will result in homestead property in Dade County being valued at below its correctly "assessed value" and that it therefore violates Article VIII, Section VI, Paragraph I (a) of the Georgia Constitution, which provides that the fiscal authority of a board of education "shall annually levy [the school] tax upon the assessed value of all taxable property within the territory served by said school system." Blevins correctly notes that we have interpreted the term "assessed value" in this context to mean "the correctly assessed value (i.e., the assessed value approved by the revenue commissioner), not an incorrectly assessed value." *Bd. of Commrs. of Newton County v. Allgood*, 234 Ga. 9, 18 (214 SE2d 522) (1975). However, contrary to Blevins's argument, the school tax exemption does not result in homestead property being valued at below its correctly assessed value. Instead, under Article VIII, Section VI, Paragraph I (a), the Dade County School District first levies the school tax on the correctly "assessed value" of homestead property in the county. Then, under the separate constitutional authority for the homestead exemptions, the homeowners' school tax liability is reduced by the amount of the exemption. Although the effect of this scheme may differ little in its result from a scheme in which the school tax is directly levied on the "base year assessed value" of the homestead property, with no exemption thereafter reducing the taxpayer's liability, "the state constitution contemplates such a distinction." *Simmons*, 723 P2d at 890. See also *Blum*, 281 Ga. at 241 (explaining that courts must construe our Constitution to make its parts harmonize and to give sensible meaning to each of them); *Columbus-Muscogee County*, 276 Ga. at 334, n. 2 (holding, after concluding that the freezing of a homestead property's value for ad valorem tax purposes at the fair market value on the date the homestead was

---

[1] In *Columbus-Muscogee County Consolidated Govt. v. CM Tax Equalization*, 276 Ga. 332 (579 SE2d 200) (2003), we addressed whether a local constitutional amendment violated the Uniformity Clause. The amendment did not create a homestead exemption but provided, among other things, that homestead property would be valued for ad valorem tax purposes "based upon the fair market value of the property as of January 1, 1983; or as of January 1 of the first year when homestead exemption is allowed and claimed after January 1, 1983; or as of January 1 of the year following the last change of ownership after January 1, 1983, whichever is later." Id. at 332. This Court held that the local constitutional amendment did not violate the Uniformity Clause because it constituted an amendment to the Uniformity Clause and was therefore valid. See id. at 333-334.

acquired on one of several alternative dates did not violate the Uniformity Clause, that there was also no merit to the contention that the homestead freeze violated Article VIII, Section VI, Paragraph I (a)).

For these reasons, we reject Blevins's contention that the school tax exemption violates Article VIII, Section VI, Paragraph I (a).

3. Blevins argues that the phrase "improvements to the homestead" is facially vague and may result in arbitrary decisions by Dade County's tax appraisers. "To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent." *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 153 (464 SE2d 808) (1996). Moreover,

> [o]utside the First Amendment overbreadth context, a plaintiff can succeed in a facial challenge only by establish-[ing] that no set of circumstances exists under which the (statute) would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep.

*Smith v. Baptiste*, 287 Ga. 23, 39 (694 SE2d 83) (2010) (Nahmias, J., concurring specially) (citation and punctuation omitted).

The terms "improvements" or "improvements to the homestead" are used frequently in our Revenue Code, including in other homestead exemption statutes, and have never been deemed unconstitutionally vague. See, e.g., OCGA § 48-5-20 (a) (2) (imposing burden on taxpayer to "file a new timely claim for a homestead exemption . . . or to file a timely return where improvements have been made to the real property since it was last returned for taxation"); OCGA § 48-5-47.1 (b) (providing that the homestead exemption for persons 62 years of age or older and who have an annual income of less than $30,000 does not apply to "improvements to the homestead"); OCGA § 48-5-269 (b) (providing in the context of bona fide conservation use property that "improvements shall have their current use value determined as otherwise provided by law").

Moreover, when determining if work done on property constitutes an "improvement to real property" for purposes of the statute of repose set forth in OCGA § 9-3-51, we have held that "[s]everal factors have arisen as being important to a commonsense analysis of what constitutes an improvement to real property." *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 94 (296 SE2d 579) (1982) (explaining that the factors are whether the improvement is permanent in nature,

whether it adds to the value of the realty for the purposes for which it was intended to be used, and whether the "improvement" is intended to be an improvement to real property or to remain personalty); *Armstrong v. Royal Lakes Assocs.*, 232 Ga. App. 643, 645 (502 SE2d 758) (1998) (same). We therefore see no merit to this contention as presented in this case.

4. Blevins argues that the Dade County homestead exemptions violate the Due Process and Equal Protection Clauses of the Georgia Constitution, see Ga. Const. of 1983, Art. I, Sec. I, Pars. I and II, because they create a class of earlier assessed homeowners that obtain more tax relief than later assessed homeowners, treat homeowners more favorably than owners of other types of property, arbitrarily limit the exemption to three acres of land, and arbitrarily preclude a homeowner who initially acquires less than three acres from claiming an exemption for land that he subsequently adds if his total is still not more than three acres.

However, in *Columbus-Muscogee County*, this Court upheld against due process and equal protection challenges a tax scheme that froze a homestead property's value for ad valorem tax purposes at the fair market value on the date the homestead was acquired or on one of several alternative dates. See 276 Ga. at 334-338. Applying rational basis review and acknowledging that a governing body is given particularly wide discretion in drawing classifications for purposes of taxation, we explained that the scheme promoted legitimate governmental purposes including the "encouragement of neighborhood preservation, continuity, and stability, and the protection of the reliance interests of existing homeowners." Id. at 335. See also *Nordlinger v. Hahn*, 505 U. S. 1, 11-12 (112 SC 2326, 120 LE2d 1) (1992) (upholding a similar California tax scheme against due process and equal protection challenges). Likewise, we conclude here that the General Assembly reasonably could have concluded that Dade County's tax exemptions served the governmental purposes recognized in *Columbus-Muscogee County* and that the limits placed on the exemptions are not arbitrary. See also *City of Atlanta v. Spence*, 242 Ga. 194, 197 (249 SE2d 554) (1978) (holding that a statute limiting the tax exemption of real property owned by a local government outside its territorial jurisdiction to 300 acres was not an arbitrary classification).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 2010.

*Townley & Lindsay, Christopher A. Townley, Thomas F. Lindsay,* for appellant.

*Thurbert E. Baker, Attorney General, James R. Rogers*, for appellee.